## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Wilbert Glover, | Civ. No. 18-285 (NEB/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Matt Bostrom, Dave Metusalem, Joe Paget, #9, Sergeant Richard Rodriguez, | |
| Defendants. | |

Wilbert Glover, OID 262673, MCF-Faribault, 1101 Linden Lane, Faribault, MN 55021, *pro se* Plaintiff.

Kimberly R. Parker, Esq., and Robert B. Roche, Esq., Ramsey County Attorney's Office, Civil Division, counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. No. 74.) In lieu of a Response, Plaintiff filed a number of affidavits, objections, and exhibits. (*See* Doc. Nos. 82, 83, 85, 86, 87, 88, 89, 91, 92, 93, 95, 96, 97, 98, 100, 101, 103.) Defendants filed their Reply brief on December 18, 2019. (Doc. No. 99.) For the reasons stated below, this Court recommends that Defendants' Motion for Summary Judgment be granted.

**I.  Background**

*Pro se* Plaintiff Wilbert Glover filed this lawsuit on January 30, 2018. (Doc. No. 1, Compl.) In his initial Complaint, Plaintiff alleged that he was subjected to racial slurs and

harassment by guards while he was in custody at the Ramsey County Adult Detention Center ("ADC"), that he submitted grievances complaining of this conduct, and that those grievances were not addressed. (*Id.* at 4.) Plaintiff attached several grievances, filed between 4/15/16 and 12/18/16, as exhibits to his Complaint. (*See* Doc. No. 1-1 at 1, 3–5, 9–11, 13–14, 16–17, 19–20, 26–28, 31–33.) Subsequently, Plaintiff filed an Amended Complaint, listing the Ramsey County Sheriff Managers Office and Greg Croucher, an employee of the Minnesota Department of Corrections in its Inspection and Enforcement Division, as additional Defendants. (Doc. No. 15, Am. Compl. 1.)

On August 27, 2018, Defendants Matt Bostrom, Dave Metusalem, Joe Paget, Richard Rodriguez, and the County of Ramsey Sheriff Manager's Office filed a Motion to Dismiss. (Doc. No. 20.) On October 18, 2018, this Court recommended that Motion to Dismiss be granted in part and denied in part, concluding that Plaintiff's Complaint stated an equal-protection claim based on his allegations that Defendants refused to consider his grievances about being the target of racially offensive language. (Doc. No. 35, 10/18/18 Report and Recommendation 5–7, 11.) This Court also concluded that Plaintiff failed to state a claim under the Eighth Amendment for unconstitutional conditions of confinement. (*Id.* at 7–8.) The District Court adopted this Court's R&R on February 5, 2019, dismissing Plaintiff's Eighth Amendment claim and leaving Plaintiff's equal-protection claim as the sole claim against Defendants Bostrom, Metusalem, Paget, and Rodriguez in their individual capacities. (*Id.* at 9.) Defendant Croucher filed a Motion to Dismiss on January 18, 2019, arguing that Plaintiff failed to plausibly allege that Croucher was personally involved in the violations alleged. This Court agreed,

2

recommending that Croucher be dismissed from the case, and the District Court adopted that recommendation on April 16, 2019. (Doc. Nos. 63, 66.)

Accordingly, the only remaining claim is Plaintiff's equal-protection claim. On November 6, 2019, the remaining Defendants filed a Motion for Summary Judgment. (Doc. No. 75.) Defendants argue that Plaintiff's equal-protection claim against them in their individual capacities fails because (1) Plaintiff has failed to produce evidence demonstrating their personal involvement in the violations alleged and they are therefore protected by qualified immunity, and (2) under the Prison Litigation Reform Act ("PLRA"), Plaintiff may not recover compensatory damages in a § 1983 suit absent a showing of physical injury. (*See* Doc. No. 76, Defs.' Mem. in Support.) Each of the Defendants also submitted an affidavit supporting their Motion for Summary Judgment. (*See* Doc. Nos. 77–80.) Plaintiff did not file a responsive brief, instead submitting a collection of shorter documents consisting of his own affidavits, objections to Defendants' affidavits, and photocopies of grievance and internal affairs forms. (*See* Doc. Nos. 82, 83, 85, 86, 87, 88, 89, 91, 92, 93, 95, 96, 97, 98, 100, 101, 103.) This Court construes these submissions, taken together, as Plaintiff's Response. Defendants filed their Reply brief on December 18, 2019. (Doc. No. 99.)

    A.    **Defendants' Evidence**

Defendant Matt Bostrom served as the Sheriff of Ramsey County, Minnesota from January 2011 until January 4, 2017. (Doc. No. 77, Bostrom Aff. 1.) Defendant Bostrom states that he is now aware of Plaintiff's allegations in this case, including that Plaintiff filed multiple kites and grievances asking to speak with him. (*Id.*) Defendant Bostrom,

3

however, maintains that Plaintiff's allegations and requests were never brought to his attention during his time as Sheriff, and that he only learned of them after the filing of the present lawsuit. (*Id.* at 1–2.)

Defendant David Metusalem is presently the Chief Deputy of the Ramsey County Sheriff's Office ("RCAO"). (Doc. No. 78, Metusalem Aff. 1.) Defendant Metusalem served as the Undersheriff of the ADC from August 2011 through January 2014, but he left that role approximately two years before Plaintiff's incarceration at the ADC and the events that gave rise to the present lawsuit. (*Id.* at 2.) During Plaintiff's time at the ADC, Defendant Metusalem was serving as the Undersheriff of the Court Security Services Division of the RCAO and his duties did not relate in any way to the ADC. (*Id.*)

Defendant Joseph Paget is now retired from the RCAO, but previously he served that office in multiple positions, including as the Undersheriff of the ADC from approximately January 2014 until November 2018. (Doc. No. 79, Paget Aff. 1.) Defendant Paget reviewed Plaintiff's claims that he was subjected to racially offensive language during his time at the ADC. (*Id.* at 2.) Defendant Paget states that he met with Plaintiff approximately twenty-one times to discuss his complaints, reviewed relevant video footage, and had his executive officer interview witnesses. (*Id.*) Defendant Paget states that neither video evidence nor witness statements supported Plaintiff's claims, and that he would never have tolerated ADC officers using the racial slurs Plaintiff claims he was subjected to. (*Id.*) Defendant Paget maintains that "Plaintiff's race never played any part in my evaluation or decisions regarding his grievances." (*Id.*)

4

Defendant Richard Rodriguez is a Corrections Officer Sergeant with the RCAO. (Doc. No. 80, Rodriguez Aff. 1.) Defendant Rodriguez has been with the RCAO since 2001 and has been a Sergeant in the ADC for the past fifteen years. (*Id.*) Defendant Rodriguez states that race never played a role in the handling of Plaintiff's various kites and grievances and that, in fact, Plaintiff's complaints were given extra attention and scrutiny due to the nature of his allegations. (*Id.* at 2.) Defendant Rodriguez states that this included having the Undersheriff of the ADC—Defendant Paget—meet with Plaintiff to review the kites and grievances. (*Id.*) Defendant Rodriguez further states that to the extent Plaintiff's complaints were addressed to him, personally, he reviewed the available evidence—including video footage and witness statements—to determine whether Plaintiff's allegations were true. (*Id.*) Defendant Rodriguez states that the available evidence did not support Plaintiff's claims, that he would not have tolerated officers using the language Plaintiff complains of, and that Plaintiff's race never played a part in Defendant Rodriguez's evaluation of or decisions regarding Plaintiff's claims. (*Id.* at 2.)

### B.     Plaintiff's Evidence

Plaintiff has produced a number of documents in support of his equal-protection claim that he was subjected to repeated racial slurs and harassment by guards at the ADC, and that because of his race, Defendants refused to address his concerns when he complained of the offensive conduct. Plaintiff's filings fall into two categories: copies of grievance and internal-affairs forms, and sworn affidavits by Plaintiff.

Plaintiff has filed four sets of documents containing copies of grievance and internal affairs forms. (*See* Doc. Nos. 1, 15, 83, 103.) Most of these are authored and

signed by Plaintiff himself, while others appear to have been signed and submitted by other residents of the ADC. The statements contained in these documents allege a pattern of ADC staff using racially abusive language toward African American inmates, and a refusal on the part of ADC authorities to address the problem. Specifically:

- Plaintiff states he was told his kites were not being addressed because the sergeant and lieutenant "don't see n*gger" (Doc. No. 1-1, Compl. Ex. 1);

- Plaintiff states that upon complaining of the past-due date of milk, a female officer responded "you f*cking n*gger it always something" (*Id.* at 3);

- Plaintiff states that a female officer said "I am trying to work with you dumb a** n*ggers about this milk file grievance" (*Id.* at 4);

- Plaintiff claims that if he were white, his grievances would have been addressed (*Id.* at 10);

- Plaintiff states that every time he asks for a sergeant, he was told the sergeant "don't see n*gger like me" (*Id.* at 11);

- Plaintiff states that when he complained about a problem with his hot water, a guard responded that, "he is not a plumber n*gger" (*Id.* at 12);

- Plaintiff states that his complaints about racially abusive language are not being addressed and an officer is lying (*Id.* at 13);

- Plaintiff asks that a "racist officer" who has been destroying his paperwork be identified (*Id.* at 16);

- Plaintiff states that officers are lying about him because of his race (*Id.* at 17);

- Plaintiff states that an officer called inmates "you boys, nasty n*ggers, stupid n*gger" (*Id.* at 18);

- Plaintiff states that the white administration is never going to believe him because of his race (*Id.* at 19);

- J.L. states that he wants a formal apology for an officer's unprofessional conduct (*Id.* at 20);

- C.T. states that he heard an officer say "switch-in n*gger" to another ADC resident (*Id.* at 21);

- N.A. states that officers in the ADC called inmates "boys, n*ggers, n*gger, stupid monkey" (*Id.* at 22);

- Plaintiff states an officer told another ADC inmate "stupid n*gger" (*Id.* at 23);

- Plaintiff claims "racist officers" are obstructing his grievances (*Id.* at 24);

- Plaintiff states he heard an officer call another inmate a "stupid n*gger" (*Id.* at 25);

- Plaintiff states a "racist officer" refused to answer African-American inmates' calls and used racial slurs over the intercom (*Id.* at 31);

- Plaintiff states an officer told him "you n*ggers can file as many [grievances] as you want" (*Id.* at 32);

- Plaintiff states an officer told other ADC inmates "you n*ggers need to pay attention" (*Id.* at 33);

- Plaintiff states an officer told him "all you n*gger are the same complaint complaint [sic] and there's no grievances" (Amend. Compl. 4);

- Plaintiff states an officer said "enough dumb n*ggers" (*Id.* at 5);

- Plaintiff states he and other ADC inmates have been called "stupid n*gger and Wilbert n*gger boy" (Doc. No. 83-1, Pl. Prod. of Documents Ex. 2);

- J.W. states that Defendant Paget frequently used racially abusive language, including "n*gger boy, monkey n*ggers, black stupid, n*gger" (Doc. No. 103-2, Pl. Prod. of Documents Ex. 2);

7

- M.D. states that he saw Defendant Paget say to Plaintiff, "N*gger I will get your legal papers when I see fit keep asking smart n*gger I will put your dump [sic] n*gger a** in segregation" (*Id.* at 3); and

- Plaintiff states that he was told Sergeant Rodriguez does not "see n*gger[s] like me" and that, in an unrelated incident, Sergeant Rodriguez called Plaintiff an "old a** dumb n*gger" (Doc. No. 86, Pl.'s Exs. 9).

Many of these official forms also contain requests to speak to individual Defendants, while others contain statements that Defendants were aware of the racially abusive language being used but took no action to stop it. (*See, e.g.*, Compl. Ex. 1, 3–5 (requesting to speak with Defendant Metusalem); *id.* at 9–11 (requesting to speak with Defendant Bostrom); *id.* at 16 (requesting to speak with Defendant Paget); *id.* at 24 (stating that Defendant Rodriguez was aware of racially abusive language being used but that it had not stopped, and requesting to speak with internal affairs).)

Plaintiff filed four affidavits, each responding to those filed by the individual Defendants in support of their Motion for Summary Judgment. (Doc. Nos. 87, 92, 97, 101.) In response to Defendant Rodriguez's affidavit, Plaintiff states that he wrote to internal affairs and Ramsey County's manager's office but received no response because he and other inmates were "all Afro American." (Doc. No. 87, Glover Aff. 2.) Plaintiff further asserts that Defendant Rodriguez's affidavit contains incorrect information. (*Id.*) In response to Defendant Metusalem's affidavit, Plaintiff asserts that the information contained therein is untrue. (Doc. No. 92, 2d Glover Aff. 2.) Responding to Defendant Bostrom's affidavit, Plaintiff states that he filed grievances addressed to Defendant Bostrom and those were returned signed by other officers. (Doc. No. 97, 3d Glover Aff.

8

1.) Plaintiff further asserts that Defendant Bostrom "was there" and that his affidavit is untrue. (*Id.* at 2.) And in his response to Defendant Paget's affidavit, Plaintiff states that Defendant Paget never came to see him twenty-one times. (Doc. No. 101, 4th Glover Aff. 2.) Plaintiff further states that Defendant Paget received and rejected Plaintiff's grievances, in large part due to Plaintiff's race. (*Id.*)

### III. Analysis

Plaintiff alleges an equal-protection claim against Defendants in their individual capacities under the Fourteenth Amendment. (*See* Compl.; Am. Compl.) Plaintiff requests compensatory damages in the amount of $2,300,000. (Compl. 5.) Defendant argues that summary judgment is appropriate in this matter for two reasons: (1) Defendants lacked sufficient personal involvement and are entitled to qualified immunity, and (2) Plaintiff cannot recover compensatory damages under the PLRA because he has failed to allege and produce evidence of a physical injury. (Defs.' Mem. in Support 1.) For the reasons that follow, this Court agrees.

#### A. Standard of Review

Summary judgment is appropriate if the evidence in the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Thomas v. Heartland Emp't Servs., LLC*, 797 F.3d 527, 529 (8th Cir. 2015). The moving party bears the initial burden of informing the court of the basis for its motion and identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643

9

F.3d 1081, 1085 (8th Cir. 2011). If the moving party does so, the nonmoving party "may not . . . rest on mere allegations or denials," but must point to evidence "of specific facts which create a genuine issue of material fact." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). The mere existence of a factual dispute will not defeat a motion for summary judgment unless that dispute is "genuine," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Qualified Immunity

Defendants argue that they should be dismissed from this lawsuit because they are entitled to qualified immunity. Specifically, Defendants argue (1) Plaintiff cannot establish that Defendants were personally responsible for a violation of his equal-protection rights; and (2) any alleged constitutional violation was not clearly established.[1] (Defs.' Mem. in Support 10–17.) This Court agrees.

Section 1983 provides a cause of action to any person injured as a result of being deprived of "any rights, privileges, or immunities secured by the Constitution" by a person acting under "color of state law." 42 U.S.C. § 1983. Under the doctrine of qualified immunity, however, a law enforcement officer is entitled to dismissal of a Section 1983 action if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sanders v. City of*

---

[1] Because this Court concludes, as explained below, that Plaintiff has failed to identify any potentially admissible evidence in the record demonstrating that Defendants were responsible for a violation of his constitutional rights, it declines to address the question of whether such a violation was clearly established.

*Minneapolis*, 474 F.3d 523, 526 (8th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity is not just a defense to liability, it constitutes immunity from suit." *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).

Eighth Circuit courts employ a two-step analysis when considering an officer's claim of qualified immunity. First, viewing the evidence in the light most favorable to the Plaintiff, this Court must determine whether the officer's conduct violated a constitutional right. *Moore v. Indehar*, 514 F.3d 756, 759 (8th Cir. 2008) (citing *Saucier*, 533 U.S. at 201). If an officer violated a constitutional right, only then does this Court consider "whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." *Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) (citing *Saucier*, 533 U.S. at 202). This Court will address each individual Defendant's right to qualified immunity in turn.

        1.     **Defendant Bostrom**

Defendant Bostrom served as the Sheriff of Ramsey County, Minnesota during the time Plaintiff was housed in the ADC. (Bostrom Aff. 1.) In his sworn affidavit, Defendant Bostrom states that Plaintiff's allegations and requests were never brought to his attention during that time, and that he only learned of them with the filing of the present lawsuit. (*Id.* at 1–2.) Plaintiff's evidence to the contrary consists solely of official forms in which he asks to speak with Defendant Bostrom, as well as Plaintiff's sworn statement that he submitted such forms and they were returned to Plaintiff signed by

11

lower-ranking officers. (*See, e.g.*, Compl. 9–11; Glover Aff. 1.) Plaintiff alleges that Defendant Bostrom is not telling the truth (Glover Aff. 2), but on a Motion for Summary Judgment, Plaintiff may no longer rest on mere allegations – he must point to evidence of specific facts. *Krenik*, 47 F.3d at 957.

This Court finds that the evidence in the record is insufficient to show that Defendant Bostrom's conduct violated Plaintiff's constitutional rights. The evidence identified by Plaintiff at best demonstrates that Plaintiff attempted to contact Defendant Bostrom and was unsuccessful. There is simply no evidence in the record contradicting Defendant Bostrom's sworn statement that he was never made aware of Plaintiff's complaints concerning the use of racially abusive language in the ADC during his tenure as Sheriff. Accordingly, this Court concludes that Defendant Bostrom is entitled to qualified immunity and recommends he be dismissed from this litigation.

### 2. Defendant Metusalem

While Plaintiff was housed in the ADC, Defendant Metusalem was serving as the Undersheriff of the Court Security Services Division of the RCAO and his duties did not relate in any way to the ADC. (Metusalem Aff. 1.) Defendant Metusalem states in his sworn affidavit that because of this, he was never made aware of Plaintiff's complaints. (*Id.*) As with Defendant Bostrom, Plaintiff's evidence to the contrary consists entirely of grievance forms in which Plaintiff demands to speak with Defendant Metusalem. (Compl. 1, 3–5.) Plaintiff has produced no evidence contradicting Defendant Metusalem's sworn statement that he was never made aware of Plaintiff's complaints until the filing of this lawsuit. Plaintiff alleges that Defendant Metusalem's statements in

his affidavit are untrue (2d Glover Aff. 2), but on a Motion for Summary Judgment, Plaintiff can no longer rest on mere allegations, he is required to point to evidence of specific facts. *Krenik*, 47 F.3d at 957. Plaintiff has not done so.

This Court finds that the evidence in the record is insufficient evidence to show that Defendant Metusalem's conduct violated Plaintiff's constitutional rights. Accordingly, this Court concludes that Defendant Metusalem is entitled to qualified immunity, and recommends he be dismissed from this litigation.

### 3. Defendant Rodriguez

Unlike Defendants Bostrom and Metusalem, Defendant Rodriguez actually worked as a sergeant at the ADC during the time Plaintiff was housed there. (Rodriguez Aff. 1.) Moreover, Plaintiff alleges that Defendant Rodriguez both used racially abusive language toward him, calling Plaintiff "old a** dumb n*gger" (Pl.'s Exs. 9), and was also unwilling to address Plaintiff's grievances due to Plaintiff's race (*id.*; Compl. 1). Plaintiff's evidence in support of these allegations consists of two grievance forms.

Defendant Rodriguez disputes Plaintiff's claims, stating in his sworn affidavit that race never played a role in how he handled Plaintiff's complaints and that, in fact, Plaintiff's allegations regarding the use of racially abusive language in the ADC were given extra attention and scrutiny due to their nature. (Rodriguez Aff. 2.) Defendant Rodriguez also stated that to the extent Plaintiff's complaints were addressed to him, Defendant Rodriguez personally reviewed the available evidence. (*Id.*)

This Court finds that the grievance forms identified by Plaintiff, without more, are insufficient to demonstrate that Defendant Rodriguez's conduct violated his rights. The

grievance forms in question actually contain three separate statements: one made by Plaintiff himself, and two that were allegedly made to Plaintiff by other ADC inmates. (*See* Compl. 1; Pl.'s Exs. 9.) While this Court views the record in the light most favorable to Plaintiff as the non-moving party, it does "not stretch this favorable presumption so far as to consider as evidence statements found only in inadmissible hearsay." *Mays v. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001) (citing Fed R. Civ. P. 56(e); *Cronquist v. City of Minneapolis*, 237 F.3d 920, 927 (8th Cir. 2001) (holding that affidavits based on hearsay cannot defeat a summary-judgment motion)). Here, the secondhand statements relayed in Plaintiff's grievance forms are inadmissible hearsay. Plaintiff has also not obtained deposition testimony or affidavits from the inmates who allegedly provided him with these accounts, and thereby failed to provide any evidence from these sources that would be potentially admissible at trial. *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) (citing *Mays*, 255 F.3d 644, 648).

      Unable to rely on the secondhand statements related in the grievance forms, Plaintiff's claim against Defendant Rodriguez rests entirely on Plaintiff's unsupported allegation that Defendant Rodriguez used racial slurs when speaking to Plaintiff. Beyond this bald allegation, Plaintiff has not provided any evidence to support a finding that Defendant Rodriguez violated Plaintiff's constitutional rights. *Krenik*, 47 F.3d at 957. Accordingly, this Court concludes that Defendant Rodriguez is entitled to qualified immunity, and recommends he be dismissed from this litigation.

### 4. Defendant Paget

The record in this matter demonstrates that Defendant Paget served as the Undersheriff of the ADC during the time Defendant was housed there. (Paget Aff. 1.) Defendant Paget and Plaintiff agree that Defendant Paget reviewed Plaintiff's grievances claiming that Plaintiff was subjected to racially offensive language during his time at the ADC. (*Id.* at 2; 4th Glover Aff. 2.) Defendant Paget states that he met with Plaintiff approximately twenty-one times to discuss Plaintiff's concerns, but Plaintiff contests that number. (Paget Aff. 2; 4th Glover Aff. 2.) In his sworn affidavit, Defendant Paget states that neither video evidence nor witness statements supported Plaintiff's claims, that he would never have tolerated the racial slurs Plaintiff claims he was subjected to, and that Plaintiff's race played no part in Defendant Paget's evaluation or decisions regarding Plaintiff's grievances. (*Id.*)

Plaintiff also submitted additional forms containing statements from two other ADC inmates—after Defendants had already filed their Reply brief—representing that Defendant Paget himself frequently used racially abusive language toward Plaintiff and other ADC inmates. (*See* Pl. Prod. of Documents Ex. 2, 3.) These documents, however, constitute inadmissible hearsay. And, again, Plaintiff has not obtained deposition testimony or affidavits from the inmates who allegedly authored these documents, and Plaintiff has therefore failed to provide any evidence from these sources that would be potentially admissible at trial. *Kilgore*, 926 F.3d at 485.

In sum, this Court finds no potentially admissible evidence in the record demonstrating that Defendant Paget violated Plaintiff's constitutional rights.

Accordingly, this Court concludes that Defendant Paget is entitled to qualified immunity, and recommends he be dismissed from this litigation.

## C. Compensatory Damages

Alternatively, Defendants argue that summary judgment should be granted because Plaintiff is barred by the PLRA from recovering compensatory, monetary damages absent proof of a physical injury. (Defs.' Mem. in Support 18–19.) This Court agrees.

The PLRA applies to only those litigants who are in custody at the time they file a lawsuit. *Doe v. Washington Cnty.*, 150 F.3d 920, 924 (8th Cir. 1998); *see also Jefferson v. Roy*, No. 16-CV-3137 (WMW/SER), 2019 WL 5104784, at *6 (D. Minn. May 8, 2019), *report and recommendation adopted*, No. 16-CV-3137 (WMW/SER), 2019 WL 4013960 (D. Minn. Aug. 26, 2019) (holding that the PLRA applied to an ex-prisoner who was incarcerated when he commenced lawsuit). Here, it is uncontested that Plaintiff was incarcerated at the time he filed his Complaint, thus the PLRA applies. (*See* Compl. 1, 6 (listing Plaintiff's mailing address as MCF Faribault).)

Section 1997e(e) of the PLRA provides:

> (e) Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

The Eighth Circuit has held that this statute applies to "all federal actions brought by prisoners," including those alleging constitutional violations. *See Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012) (concluding that the PLRA precluded recovery of

16

compensatory damages because prisoner's free-exercise claims contained no allegation of physical injury) (quoting *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004)).

Here, Plaintiff did not allege a physical injury, nor is there evidence in the record indicating that he suffered one. Plaintiff's Complaint seeks only compensatory damages in the amount of $2,300,000. (Compl. 5.) As a consequence, this Court concludes that Plaintiff's claim is barred by the PLRA's physical-injury requirement and recommends that it therefore be dismissed.

### III. Conclusion

For the foregoing reasons, this Court concludes that Defendants are entitled to qualified immunity, and that Plaintiff is barred from seeking compensatory, monetary damages under the PLRA because he has failed to allege or show a physical injury. Accordingly, this Court recommends that Defendants' Motion for Summary Judgment (Doc. No. 74) be granted.

### RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. 74) be **GRANTED**;

2. Plaintiff's Complaint (Doc. No. 1) and Amended Complaint (Doc. No. 15) be **DISMISSED WITH PREJUDICE**; and

3. Judgment be entered accordingly.

Date: May 28, 2020          *s/ Becky R. Thorson*_____
                            BECKY R. THORSON

                                              United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).